[Cite as *State ex rel. Unterbrink v. Elida Local Schools Bd. of Edn.*, 2020-Ohio-5378.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE EX REL.
TRAVIS R. UNTERBRINK,

        RELATOR-APPELLANT,

        v.

ELIDA LOCAL SCHOOLS
BOARD OF EDUCATION,

        RESPONDENT-APPELLEE.

CASE NO. 1-20-22

O P I N I O N

Appeal from Allen County Common Pleas Court
Trial Court No. CV 2018 0561

**Judgment Affirmed**

Date of Decision: November 23, 2020

APPEARANCES:

    *Edward J. Stechschulte* for Appellant

    *Lisa E. Pizza* for Appellee

**PRESTON, J.**

{¶1} Relator-appellant, Travis R. Unterbrink ("Unterbrink"), appeals the April 3, 2020 decision of the Allen County Court of Common Pleas granting the motion for summary judgment of respondent-appellee, Elida Local Schools Board of Education (the "Board"). For the reasons that follow, we affirm.

{¶2} In 2014, Unterbrink and the Board entered into a one-year limited teaching contract for the 2014-2015 school year. (Doc. No. 1, Ex. 2). Unterbrink was hired as a middle school music teacher and assistant high school band director. When Unterbrink was first hired by the Board, he possessed a four-year Resident Educator license, and he was entering his third year in Ohio's Resident Educator Program.

{¶3} The Ohio Resident Educator Program is "a comprehensive, four-year initiative to assist beginning teachers with mentoring and professional development as they start their education careers." Ohio Department of Education, *Resident Educator Program*, http://education.ohio.gov/Topics/Teaching/Resident-Educator-Program (accessed Oct. 6, 2020). It is "designed to improve teacher retention, enhance teacher quality, and result in improved student achievement." *Id.* The Resident Educator Program is divided into three phases: the "Mentoring Years," the "Assessment Year(s)," and the "Leadership Year." The Mentoring Years comprise the first two years of the Resident Educator Program. After completion

of the Mentoring Years, teachers begin the Assessment Year(s), during which they must take the Resident Educator Summative Assessment ("RESA"). Upon successful completion of the RESA, the Leadership Year, and other program requirements, teachers in the Resident Educator Program become eligible to apply for a professional teaching license.

{¶4} Under the Resident Educator Program as it existed when Unterbrink was hired by the Board, teachers were required to obtain passing scores on five different tasks in order to pass the RESA. Teachers were afforded three opportunities to pass the RESA. If a teacher did not submit a task for evaluation during their third year in the program, or if they failed to receive a passing score on a submitted task, the teacher could attempt or reattempt to obtain a passing score on the task during their fourth year in the program. If the teacher again failed to receive a passing score on all five tasks during their fourth year in the program, they could apply for a one-year extension of their Resident Educator license, during which the teacher would be required to retake the deficient portions of the RESA. Teachers who obtained a passing score on one or more tasks during a previous attempt to pass the RESA were not required to resubmit those tasks for scoring during subsequent attempts.

{¶5} During the 2014-2015 school year, Unterbrink's first Assessment Year, Unterbrink submitted two RESA tasks for scoring. (Doc. No. 15). Unterbrink

received a passing score on only one of these tasks. (Doc. No. 15, Ex. D). In 2015, Unterbrink and the Board entered into a second one-year limited teaching contract whereby Unterbrink was reemployed for the 2015-2016 school year. (Doc. No. 1, Ex. 3). During the 2015-2016 school year, Unterbrink received passing scores on two RESA tasks. (Doc. No. 1, Ex. 11); (Doc. No. 15, Ex. S). Because Unterbrink still needed to successfully complete the final two RESA tasks, he applied for a one-year extension of his Resident Educator license, which was granted. (Doc. No. 15, Ex. B). With the extension, Unterbrink's Resident Educator license was effective until June 30, 2017. (Doc. No. 1, Ex. 7). In 2016, the Board offered Unterbrink a third one-year limited teaching contract and Unterbrink was reemployed for the 2016-2017 school year. (Doc. No. 1, Ex. 4).

{¶6} During the 2016-2017 school year, Unterbrink submitted the final two RESA tasks for scoring and awaited the results, which were to be released on June 1, 2017. (Doc. Nos. 15, 16). However, this presented a problem for the Board. If the Board failed to provide Unterbrink with written notice of its intention not to reemploy him for the 2017-2018 school year on or before June 1, 2017, Unterbrink would be considered reemployed for the 2017-2018 school year. *See* R.C. 3319.11. Yet, Unterbrink needed to receive passing scores on the final two RESA tasks in order to be eligible for employment for the 2017-2018 school year. Because the Board was required to make some decision concerning Unterbrink's employment

before June 1, at its May 16, 2017 meeting, the Board resolved to reemploy Unterbrink for the 2017-2018 school year, provided that Unterbrink "possess[] the appropriate certification as of the first day of July 2017." (Doc. No. 1, Ex. 6). After the meeting, Unterbrink and the Board entered into a fourth one-year limited teaching contract whereby Unterbrink was reemployed for the 2017-2018 school year. (Doc. No. 1, Ex. 5).

{¶7} On June 1, 2017, Unterbrink learned that he did not receive a passing score on one of the RESA tasks he submitted for scoring. (Doc. No. 1); (Doc. No. 15, Ex. T). Unterbrink then applied for an additional one-year extension of his Resident Educator license. (Doc. No. 15, Ex. B). However, under the regulations in effect at the time, "[f]ailure to pass the deficient portions of the [RESA] while teaching under a one-year extension of the resident educator license * * * result[ed] in ineligibility for a professional educator license or any additional extension of the resident educator license * * * for a minimum of one year." Ohio Adm.Code 3301-24-04(D)(2)(c) (Jan. 31, 2014). Thus, because Unterbrink was under a one-year extension of his Resident Educator license when he failed to pass the RESA for the third time, his request for an additional one-year extension was denied. (Doc. No. 15, Ex. B). Furthermore, Unterbrink applied for, but was denied, a long-term substitute-teaching license. (Doc. No. 15, Ex. B). Therefore, it appeared that Unterbrink would not possess an appropriate teaching license as of July 1, 2017.

{¶8} The Board held a special meeting on June 7, 2017. (Doc. No. 1, Ex. 1). At the meeting, the Board resolved to terminate Unterbrink's limited contract for the 2017-2018 school year "as a result of [Unterbrink's] third failure to pass the [RESA] and his inability to qualify for a professional license for the 2017-2018 school year." (*Id.*). The Board subsequently entered this determination upon its minutes. (*Id.*). At a second special meeting held on June 30, 2017, the Board voted to approve the employment of Unterbrink's replacement for the 2017-2018 school year. (Doc. No. 17, Ex. C).

{¶9} On August 2, 2017, the Ohio Department of Education ("ODE") announced that it was restructuring the RESA. (Doc. No. 16, Ex. C). Under the restructured RESA, instead of requiring teachers to complete five tasks, teachers would be required to complete only "one task in which they * * * submit one videotaped lesson and answer 10-12 related questions." (*Id.*). ODE determined that, in light of this restructuring, Unterbrink had successfully completed the RESA. (Doc. No. 1, Ex. 8); (Doc. No. 16, Ex. B). In addition, although ODE had earlier denied Unterbrink's request for an additional one-year extension of his Resident Educator license, ODE purported to grant Unterbrink an extension of his license retroactive to July 1, 2017. (Doc. No. 1, Ex. 8); (Doc. No. 15, Ex. B). As a result, in a letter dated August 10, 2017, Unterbrink, through his union representative, demanded that the Board rescind its June 7, 2017 action terminating his contract for

the 2017-2018 school year and reinstate him to his position. (Doc. No. 1, Ex. 8). However, by letter dated August 18, 2017, Unterbrink was advised that the "District d[id] not intend to reinstate [him] to a full-time teaching position within the music department at Elida Local Schools." (Doc. No. 1, Ex. 9).

{¶10} Unterbrink was a member of the Elida Education Association ("EEA"), which was a signatory to a collective bargaining agreement ("CBA") with the Board. (Doc. No. 1, Ex. 10). In September 2017, Unterbrink filed a grievance pursuant to the terms of the CBA. (Doc. No. 1, Ex. 11). The grievance was eventually submitted to arbitration. (*Id.*). On June 19, 2018, the arbitrator denied Unterbrink's grievance. (*Id.*). Specifically, the arbitrator concluded that despite Unterbrink's observations that "[t]here was no termination hearing or notice of any kind" and that he "only learned of his termination after the Board voted on his contract," the Board had just cause to terminate Unterbrink's contract. (*Id.*).

{¶11} On November 28, 2018, Unterbrink filed a petition for writ of mandamus in the trial court. (Doc. No. 1). In his petition, Unterbrink averred that he is entitled to a limited contract for the 2017-2018 school year because he was properly licensed at all relevant times and had entered into a contract with the Board for the 2017-2018 school year. (*See id.*). In addition, Unterbrink maintained that because the "Board failed and refused to afford [him] any procedural rights under R.C. 3319.16," the Board's termination action is void. (*Id.*). He further asserted

that he had a clear legal right to the statutory termination procedures provided by R.C. 3319.16 and that the Board had a clear legal duty to afford him statutory process prior to terminating his teaching contract. (*Id.*). Unterbrink therefore requested that the trial court issue a writ of mandamus either compelling the Board to reinstate his limited teaching contract for the 2017-2018 school year or, at minimum, requiring the Board to rescind its termination action and follow the statutory termination procedures set forth in R.C. 3319.16. (*See id.*).

{¶12} On December 26, 2018, the Board filed a motion to dismiss Unterbrink's petition. (Doc. No. 3). On January 18, 2019, Unterbrink filed a memorandum in opposition to the Board's motion to dismiss. (Doc. No. 6). On February 11, 2019, the Board filed a reply brief in support of its motion to dismiss. (Doc. No. 9). On February 25, 2019, the trial court determined that it would be required to look beyond the parties' pleadings in order to rule on the Board's motion to dismiss. (Doc. No. 10). Accordingly, the trial court declared its intention to convert the Board's motion to dismiss into a motion for summary judgment and allowed the Board the opportunity to formally file a motion for summary judgment. (*Id.*).

{¶13} Thereafter, on March 27, 2019, the Board filed its answer to Unterbrink's petition. (Doc. No. 13). That same day, the Board filed a motion for summary judgment. (Doc. No. 14). On May 13, 2019, Unterbrink filed a

memorandum in opposition to the Board's motion for summary judgment as well as his own motion for summary judgment. (Doc. No. 20). On May 31, 2019, the Board filed a combined memorandum in opposition to Unterbrink's motion for summary judgment and reply brief in support of its motion for summary judgment. (Doc. No. 25). On June 6, 2019, Unterbrink filed a reply brief in support of his motion for summary judgment. (Doc. No. 26).

{¶14} On December 12, 2019, the trial court ordered Unterbrink and the Board to submit supplemental briefing addressing whether Unterbrink had a plain and adequate remedy at law. (Doc. No. 28). Specifically, the trial court desired additional briefing on whether Unterbrink had an adequate remedy by way of an appeal to the court of common pleas in accordance with R.C. 3319.16. (*See* Doc. Nos. 29, 30). On January 15, 2020, the Board filed its supplemental memorandum. (Doc. No. 29). Unterbrink filed his supplemental memorandum that same day. (Doc. No. 30). On January 29, 2020, both Unterbrink and the Board filed their responses to the other's supplemental memorandum. (Doc. Nos. 31, 32).

{¶15} On April 3, 2020, the trial court issued a decision denying Unterbrink's motion for summary judgment and granting the Board's motion for summary judgment. (Doc. No. 33). The trial court concluded that Unterbrink "had a clear legal right to the procedural protections of R.C. 3319.16" and that the Board had a clear legal duty to provide Unterbrink with the protections afforded by R.C.

3319.16 because "[a]t the time [the Board] voted to terminate the contract, Unterbrink was a licensed teacher to whom [R.C. 3319.16] applied." (*Id.*). Nevertheless, the trial court held that

> Unterbrink * * * had an adequate remedy at law under the very statute
> for which he is now seeking mandamus relief. * * * Unterbrink's
> adequate legal remedy following the termination of his contract was
> to appeal to this Court within thirty days after his 2017-2018 contract
> was terminated. The parties do not dispute that Unterbrink did not
> appeal to this Court after his contract was terminated, nor after [the]
> arbitrator issued an award denying his grievance. Notably, the time
> frame for filing an appeal of the termination of a teaching contract
> does not require that *written* notice of the termination be given.
> Unterbrink acknowledges that he was informed by a person in
> attendance at the June 7, 2017 board meeting that his teaching contract
> was terminated shortly after the meeting. He also acknowledges that
> in August of 2017, when he learned of the changes to RESA that he
> tried to get his teaching position with [Elida] reinstated, obviously
> having been put on notice that his teaching contract for the 2017-2018
> school year was terminated. Unterbrink further acknowledges that he
> pursued arbitration because he was terminated, participated in the

arbitration hearing, and received notice of the June 19, 2018 arbitrator's decision, all of which clearly demonstrates that he had notice that his teaching contract was terminated. Yet, no action to appeal his termination to this Court was undertaken by Unterbrink until he filed this mandamus action on November 28, 2018, some five months after he unequivocally had notice of his termination.

(Emphasis sic.) (*Id.*). Accordingly, the trial court declined to issue a writ of mandamus. (*Id.*).

{¶16} On April 23, 2020, Unterbrink filed a notice of appeal. (Doc. No. 35). He raises two assignments of error for our review, which we address together.

**Assignment of Error No. I**

**The trial court erred in holding that relator-appellant had an adequate remedy at law by way of a direct appeal under Revised Code Section 3319.16 (April 3, 2020, Journal Entry at 19).**

**Assignment of Error No. II**

**The trial court erred in holding that relator-appellant received notice of the entry of the order of termination under R.C. 3319.16, and therefore failed to exercise his remedy at law to appeal under R.C. 3319.16 (April 3, 2020, Journal Entry at 20).**

{¶17} In his first and second assignments of error, Unterbrink argues that the trial court erred by granting the Board's motion for summary judgment. Specifically, in his first assignment of error, Unterbrink contends that an order of termination from which an appeal can be taken to the court of common pleas comes

-11-

into being only after full compliance with R.C. 3319.16—that is, after "notice, hearing, a recommendation on the matter of good and just cause, a vote from the board accepting or rejecting that recommendation, and an order of termination specifying the grounds for the termination." (Appellant's Brief at 10). Unterbrink thus argues that he did not have an adequate remedy at law by way of an R.C. 3319.16 appeal to the court of common pleas because, due to the Board's utter failure to comply with the termination procedures set forth in R.C. 3319.16, there was no "R.C. 3319.16 order of termination * * * to appeal from[.]" (*Id.* at 8). Under his second assignment of error, Unterbrink argues that even if the Board is deemed to have issued an order of termination despite its failure to comply with R.C. 3319.16, he did not have an adequate remedy at law because he "did not have actual notice [of the Board's termination action] to satisfy R.C. 3319.16's notice requirement to trigger an appeal to the court of common pleas." (*Id.* at 17). Unterbrink argues that "verbal notice from a third party * * * cannot satisfy the 'receipt of notice of the entry of such order' of termination" and that R.C. 3319.16 contemplates that a teacher must be served with "a written order to apprise the teacher of the grounds for the termination decision" before they can appeal under R.C. 3319.16. (*Id.* at 18).

{¶18} "While the general rule is that standard of review in a mandamus case is abuse of discretion, where the lower court grants summary judgment, this court

reviews the decision de novo." *State ex rel. Ames v. Brimfield Twp. Bd. of Trustees*, 11th Dist. Portage No. 2019-P-0017, 2019-Ohio-4926, ¶ 10, citing *State ex rel. Manley v. Walsh*, 142 Ohio St.3d 384, 2014-Ohio-4563, ¶ 17, citing *State ex rel. Anderson v. Vermilion*, 134 Ohio St.3d 120, 2012-Ohio-5320, ¶ 8-9. Further, de novo review is appropriate where the trial court's decision whether to issue or deny a writ of mandamus turns on its resolution of a question of law, such as whether the relator had an adequate remedy in the ordinary course of law. *See State ex rel. V & A Risk Servs. v. Ohio Bur. of Workers' Comp.*, 10th Dist. Franklin No. 11AP-742, 2012-Ohio-3583, ¶ 19; *State ex rel. Moss v. Canton Civil Serv. Comm.*, 5th Dist. Stark No. CA-6938, 1987 WL 8742, *2 (Mar. 9, 1987); *State ex rel. Fostoria Daily Review Co. v. Fostoria Hosp. Assn.*, 3d Dist. Seneca No. 13-86-32, 1986 WL 14407, *2 (Dec. 19, 1986).

{¶19} Summary judgment is proper where there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can reach but one conclusion when viewing the evidence in favor of the non-moving party, and the conclusion is adverse to the non-moving party. Civ.R. 56(C); *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 219 (1994). "The party moving for summary judgment has the initial burden of producing some evidence which demonstrates the lack of a genuine issue of material fact." *Carnes v. Siferd*, 3d Dist. Allen No. 1-10-88, 2011-Ohio-4467, ¶

13, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). "In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions of the record which affirmatively support his argument." *Id.*, citing *Dresher* at 292. "The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; he may not rest on the mere allegations or denials of his pleadings." *Id.*, citing *Dresher* at 292 and Civ.R. 56(E).

{¶20} "A relator seeking a writ of mandamus must establish (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of the respondent official or governmental unit to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law." *State ex rel. Marsh v. Tibbals*, 149 Ohio St.3d 656, 2017-Ohio-829, ¶ 24, citing *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, ¶ 6. "The relator must prove entitlement to the writ by clear and convincing evidence." *Id.*, citing *State ex rel. Waters* at ¶ 13.

{¶21} In this case, Unterbrink claims that he is entitled to a writ of mandamus because the Board failed to follow R.C. 3319.16 before terminating his contract for the 2017-2018 school year. R.C. 3319.16 provides:

> The contract of any teacher employed by the board of education of any city, exempted village, local, county, or joint vocational school district may not be terminated except for good and just cause. * * *

Before terminating any contract, the employing board shall furnish the teacher a written notice signed by its treasurer of its intention to consider the termination of the teacher's contract with full specification of the grounds for such consideration. The board shall not proceed with formal action to terminate the contract until after the tenth day after receipt of the notice by the teacher. Within ten days after receipt of the notice from the treasurer of the board, the teacher may file with the treasurer a written demand for a hearing before the board or before a referee, and the board shall set a time for the hearing which shall be within thirty days from the date of receipt of the written demand, and the treasurer shall give the teacher at least twenty days' notice in writing of the time and place of the hearing. * * *

Both parties may be present at such hearing, be represented by counsel, require witnesses to be under oath, cross-examine witnesses, take a record of the proceedings, and require the presence of witnesses in their behalf upon subpoena to be issued by the treasurer of the board. * * * After a hearing by a referee, the referee shall file a report within ten days after the termination of the hearing. After consideration of the referee's report, the board, by a majority vote, may accept or reject the referee's recommendation on the termination

of the teacher's contract. After a hearing by the board, the board, by majority vote, may enter its determination upon its minutes. Any order of termination of a contract shall state the grounds for termination. * * *

Moreover, under R.C. 3319.16, "[a]ny teacher affected by an order of termination of contract may appeal to the court of common pleas of the county in which the school is located within thirty days after receipt of notice of the entry of such order."

{¶22} In its decision below, the trial court determined that Unterbrink had a clear legal right to the protections of R.C. 3319.16 and that the Board had a clear legal duty to follow R.C. 3319.16 before terminating Unterbrink's contract. (Doc. No. 33). Those determinations are not before this court for review. Instead, the only issue on appeal is whether the trial court correctly concluded that Unterbrink had an adequate remedy in the ordinary course of law by way of appeal to the court of common pleas as provided by R.C. 3319.16. "'An administrative appeal generally constitutes an adequate remedy in the ordinary course of law that precludes a writ of mandamus.'" *State ex rel. Lane v. Pickerington*, 130 Ohio St.3d 225, 2011-Ohio-5454, ¶ 11, quoting *State ex rel. Natl. Emps. Network Alliance, Inc. v. Ryan*, 125 Ohio St.3d 11, 2010-Ohio-578, ¶ 1; *see State ex rel. Alhamarshah v. Indus. Comm.*, 142 Ohio St.3d 524, 2015-Ohio-1357, ¶ 10-13. Therefore, a teacher whose contract has been terminated typically has an adequate remedy in the

ordinary course of law by way of an appeal to the court of common pleas in accordance with R.C. 3319.16. *See State ex rel. Webb v. Bd. of Edn. of Bryan City School Dist.*, 10 Ohio St.3d 27, 32-33 (1984).

{¶23} Nevertheless, Unterbrink contends that application of this general rule is not warranted in this particular case. As Unterbrink notes, there is no dispute that the Board completely failed to comply with R.C. 3319.16 before terminating Unterbrink's teaching contract. Unterbrink was never furnished with written notice of the Board's intention to consider terminating his contract. Unterbrink was never given the opportunity to request a hearing before a referee or before the Board, and no hearing was ever conducted. Unterbrink argues that "the process itself * * * is the procedural perquisite [sic] to bringing a direct appeal" under R.C. 3319.16 and that, having failed to follow the process outlined by R.C. 3319.16, the Board was legally incapable of entering an appealable order of termination. (Appellant's Brief at 9-11). Unterbrink also maintains that an appeal under R.C. 3319.16 was not an adequate remedy in this case because he did not have a "record of the facts concerning the Board's 'good and just cause' determination * * * to support an appeal or order of termination under R.C. 3319.16 to appeal from." (*Id.* at 10).

{¶24} We begin with Unterbrink's argument that there was no order of termination from which he could have appealed. The term "order of termination" is not defined in R.C. 3319.16 or anywhere else in the Revised Code. However,

provisions of the Revised Code analogous to R.C. 3319.16 can shed some light on the term's meaning. Specifically, in past cases, courts have used the provisions of R.C. Chapter 2506 to supplement R.C. 3319.16 and other sections of R.C. Chapter 3319. *See Kiel v. Green Local School Dist. Bd. of Edn.*, 69 Ohio St.3d 149 (1994), paragraph one of the syllabus (concluding that because a former version of R.C. 3319.11 did not "provide the procedure that must be followed in an appeal pursuant to [former R.C. 3319.11(G)(7)][,] * * * the procedural provisions of R.C. Chapter 2506 govern"); *Beranek v. Martins Ferry City School Dist. Bd. of Edn.*, 7th Dist. Belmont No. 88-B-11, 1989 WL 3929, *9 (Jan. 20, 1989) ("It is our conclusion that the appeal provided to the Common Pleas Court by R.C. 3319.16 receives procedural guidance by the application of Chapter 2506. of the Revised Code."). Therefore, we think it appropriate to look to R.C. Chapter 2506 and to cases interpreting and applying R.C. Chapter 2506 for guidance.

{¶25} Under R.C. 2506.01, "every final order, adjudication, or decision of any officer, tribunal, authority, board, bureau, commission, department, or other division of any political subdivision of the state may be reviewed by the court of common pleas of the county in which the principal office of the political subdivision is located as provided in Chapter 2505. of the Revised Code." R.C. 2506.01(A). As relevant here, "final order, adjudication, or decision" means "an order, adjudication, or decision that determines rights, duties, privileges, benefits, or legal relationships

of a person, but does not include any order, adjudication, or decision from which an appeal is granted by rule, ordinance, or statute to a higher administrative authority if a right to a hearing on such appeal is provided * * *." R.C. 2506.01(C). Therefore, if an order "determines rights, duties, privileges, benefits, or legal relationships" and if it is unappealable to a higher administrative authority, it is a "final order."

{¶26} Yet, even if an administrative action appears to constitute a "final order, adjudication, or decision" as defined by R.C. 2506.01(C), the action is not necessarily appealable under R.C. 2506.01. "Section 4(B), Article IV of the Ohio Constitution provides that the courts of common pleas have the power to review proceedings of administrative officers and agencies, but only if the proceedings are quasi-judicial in nature; administrative actions that are not quasi-judicial in nature are not appealable to the courts of common pleas under R.C. 2506.01." *Hennosy v. Columbus Mun. Civ. Serv. Comm.*, 10th Dist. Franklin No. 10AP-417, 2010-Ohio-5971, ¶ 12, citing *M.J. Kelley Co. v. Cleveland*, 32 Ohio St.2d 150 (1972), paragraph one of the syllabus and *Fortner v. Thomas*, 22 Ohio St.2d 13 (1970), paragraph one of the syllabus. "The 'most common test for determining whether an administrative proceeding is quasi-judicial is whether the proceeding in question involved the exercise of discretion and required notice and a hearing.'" *Id.* at ¶ 13, quoting *Andrews v. Civ. Serv. Comm. of Columbus*, 10th Dist. Franklin Nos. 95APE10-1324

and 96APE01-33, 1996 WL 188531, *2 (Apr. 18, 1996), citing *Rossford Exempted Village School Dist. v. State Bd. of Edn.*, 45 Ohio St.3d 356, 359 (1989).

{¶27} However, "whether a proceeding is a quasi-judicial one from which an R.C. 2506.01 appeal may be taken depends upon what the law requires the agency to do, not what the agency actually does." *State ex rel. Mun. Constr. Equip. Operators' Labor Council v. Cleveland*, 141 Ohio St.3d 113, 2014-Ohio-4364, ¶ 36, citing *State ex rel. Hilltop Basic Resources, Inc. v. Cincinnati*, 166 Ohio App.3d 171, 2005-Ohio-6817, ¶ 15 (1st Dist.) and *In re Appeal of Howard*, 73 Ohio App.3d 717, 719 (10th Dist.1991). Thus, "[w]here the administrative agency should have given notice, conducted a hearing and afforded the parties an opportunity to be heard and to introduce evidence, the order is the result of [a quasi-judicial proceeding] even if the administrative agency fails to afford such notice and hearing." *Howard* at 719. Accordingly, if an administrative agency is required by law to provide notice and an opportunity for a hearing prior to issuing an order, the agency's "final order" is appealable to the court of common pleas under R.C. 2506.01 notwithstanding the agency's failure to give the required notice and opportunity to be heard. *State ex rel. Fern v. Cincinnati*, 161 Ohio App.3d 804, 2005-Ohio-3168, ¶ 49-55 (1st Dist.).

{¶28} In our view, the "order of termination" referred to in R.C. 3319.16 is best thought of as a species of "final order" as that term is defined in R.C. 2506.01. Consequently, we conclude that if a board of education's order terminating a

teacher's contract is substantively similar to a final order that can be appealed under R.C. 2506.01, it is an order of termination appealable under R.C. 3319.16. Here, there can be no question that when the Board voted to terminate Unterbrink's contract and entered that determination upon its minutes, it determined Unterbrink's "rights, duties, privileges, benefits, or legal relationships." Furthermore, there was no higher administrative authority to which Unterbrink could have appealed the Board's action. Thus, because the Board's action terminating Unterbrink's teaching contract bore the characteristics of a final order, it was an "order of termination" within the meaning of R.C. 3319.16.

{¶29} Furthermore, because a final order issued under circumstances comparable to those in this case would be appealable under R.C. 2506.01, the Board's order of termination was appealable under R.C. 3319.16. As discussed above, an administrative agency's action is appealable under R.C. 2506.01 if the proceedings were quasi-judicial in nature, and a quasi-judicial proceeding does not lose its status as quasi-judicial even when the agency fails to provide notice and the opportunity for a hearing. When a board of education intends to terminate a teacher's contract, R.C. 3319.16 requires that the teacher be afforded a number of procedural protections, including notice of the board's intention to terminate and the right to a hearing. Accordingly, based on R.C. 3319.16's requirements, a board of education acts in a quasi-judicial capacity when it moves to terminate a teacher's

contract. Since the question of whether an administrative proceeding is quasi-judicial in nature depends on what the law requires the agency to do, rather than what the agency actually does, a board of education's order of termination is still the end product of a quasi-judicial proceeding even when the board fails to comply with R.C. 3319.16 altogether. *See Howard* at 719. Therefore, while the Board did not comply with R.C. 3319.16 before entering the order of termination terminating Unterbrink's teaching contract, the order of termination was still appealable under R.C. 3319.16 as the product of a quasi-judicial proceeding. *See State ex rel. Fern* at ¶ 53-54. Hence, we conclude that Unterbrink was not deprived of an adequate remedy in the ordinary course of law by way of an appeal under R.C. 3319.16 solely by reason of the Board's failure to comply with R.C. 3319.16's notice and hearing provisions.

{¶30} Although not on all fours with the instant case, the Supreme Court of Ohio's decision in *State ex rel. Chagrin Falls v. Geauga Cty. Bd. of Commrs.*, 96 Ohio St.3d 400, 2002-Ohio-4906, further reinforces our conclusion that the Board's failure to afford Unterbrink notice and the opportunity for a hearing prior to entering its order of termination did not, by itself, deny Unterbrink an adequate remedy in the ordinary course of law. In *State ex rel. Chagrin Falls*, the village of Chagrin Falls, Ohio filed a petition to annex approximately 182 acres of land from Bainbridge Township, Ohio. *Id.* at ¶ 1. After a hearing, the Geauga County Board

of Commissioners denied Chagrin Falls's petition. *Id.* Chagrin Falls did not appeal the board's decision. *Id.*

{¶31} Two years later, Chagrin Falls filed a second petition to annex the same property from Bainbridge Township. *Id.* at ¶ 2. At the time, former R.C. 709.031 required that "[t]he board of county commissioners shall set a time and place for hearing the petition * * * and shall immediately notify the agent of the petitioners of such time and place." R.C. 709.031(A) (Sept. 26, 1984). At the hearing, which was required to be public, any person could appear and "support or contest the granting of the prayer of the petition" and the board was required to consider "[a]ffidavits presented in support of or against the prayer of such petition." R.C. 709.032 (Sept. 26, 1984).

{¶32} Five months after Chagrin Falls filed its second petition, the board denied the second petition based on res judicata. *State ex rel. Chagrin Falls* at ¶ 2. The board denied the second petition without conducting the hearing required by former R.C. 709.031(A). *Id.* Following the board's denial of its second petition, Chagrin Falls filed a "complaint in the Court of Appeals for Geauga County for a writ of mandamus to compel the board to conduct a hearing on [its] second annexation petition pursuant to former R.C. 709.031(A)." *Id.* at ¶ 3. By the time it filed its petition for a writ of mandamus, Chagrin Falls had already filed an R.C.

Chapter 2506 administrative appeal in the Geauga County Court of Common Pleas from the board's denial of its second annexation petition. *Id.*

{¶33} On appeal from the appellate court's judgment dismissing Chagrin Falls's petition for a writ of mandamus, the Supreme Court of Ohio concluded that the appellate court was right to dismiss Chagrin Falls's petition because Chagrin Falls had an adequate remedy in the ordinary course of law by way of its R.C. Chapter 2506 appeal. *State ex rel. Chagrin Falls*, 96 Ohio St.3d 400, 2002-Ohio-4906, at ¶ 14. The court noted that "'[i]n order for an alternative remedy to constitute an adequate remedy at law, it must be complete, beneficial, and speedy.'" *Id.* at ¶ 6, quoting *State ex rel. Natl. Elec. Contrs. Assn., Ohio Conference v. Ohio Bur. of Emp. Serv.*, 83 Ohio St.3d 179, 183 (1998). The court concluded that while the board had not conducted a hearing on Chagrin Falls's second petition or created an administrative record, Chagrin Falls's R.C. Chapter 2506 appeal would be complete, beneficial, and speedy. *Id.* at ¶ 14. First, the court observed that Chagrin Falls could use its R.C. Chapter 2506 appeal to obtain the relief it sought in its mandamus action, i.e., a hearing pursuant to former R.C. 709.031(A), because "common pleas courts are authorized under R.C. 2506.04 to reverse an administrative decision and remand the cause to the administrative body to conduct further proceedings on the matter." *Id.* at ¶ 12. In addition, the court noted that despite the absence of an evidentiary record, "the common pleas court could

consider additional evidence in the administrative appeal if any of the circumstances in R.C. 2506.03(A)(1) to (5) applie[d]." *Id.* at ¶ 13.

{¶34} *State ex rel. Chagrin Falls* is instructive for two reasons. First, we conclude that, similarly to R.C. 2506.04, R.C. 3319.16 permits the court of common pleas to reverse a board of education's order of termination and remand the cause to the board. Admittedly, unlike R.C. 2506.04, which explicitly grants courts of common pleas the ability to "affirm, reverse, vacate, or modify [an] order * * *, or remand the cause to the officer or body appealed from with instructions to enter an order * * * consistent with the findings or opinion of the court," R.C. 3319.16 speaks only of teachers requesting "reversal or modification" of orders of termination and the common pleas court's ability to grant or deny such requests. However, "the power to reverse and vacate decisions necessarily includes the power to remand the cause to the decision maker." *Superior Metal Prods., Inc. v. Admr. Ohio Bur. of Emp. Servs.*, 41 Ohio St.2d 143, 146 (1975). Furthermore, R.C. 3319.16 does not explicitly deny to courts of common pleas the power to remand. *See Gennaro Pavers, Inc. v. Kosydar*, 38 Ohio St.2d 174, 176 (1974). While R.C. 3319.16 does not expressly provide that a court of common pleas can remand the matter of a teacher's termination to a board of education once it reverses the board's order of termination, such power is implicit in the court's power to reverse. As a result, where a teacher has been denied his right to notice and the opportunity for a hearing

prior to termination, on appeal of the order of termination to the court of common pleas under R.C. 3319.16, the court can remand the matter to the board for further proceedings consistent with the requirements of R.C. 3319.16. *See State ex rel. Chagrin Falls* at ¶ 8, 10-12, 14.

{¶35} Second, like R.C. Chapter 2506, R.C. 3319.16 allows the court of common pleas to supplement the record with new or additional evidence. To be sure, R.C. 3319.16 presupposes that the court of common pleas will be reviewing the record of a hearing conducted before a referee or a board. *See* R.C. 3319.16 (providing that the "court shall examine the transcript and record of the hearing," including "a transcript of the original papers filed with the board" and "a certified transcript of all evidence adduced at the hearing or hearings before the board [or referee]"). Yet, R.C. 3319.16 enables a court of common pleas to "hold such additional hearings as it considers advisable, at which it may consider other evidence in addition to the transcript and record." Although R.C. 3319.16 does not provide any criteria for determining when it is "advisable" for a court of common pleas to receive additional evidence, R.C. Chapter 2506 is once again a source of direction. *See Biggert v. Highland Cty. Bd. of Dev. Disabilities*, 4th Dist. Highland No. 12CA19, 2013-Ohio-2112, ¶ 22.

{¶36} Under R.C. 2506.03, a court reviewing a final order, adjudication, or decision is "confined to the transcript" unless any one of the circumstances

described in R.C. 2506.03(A)(1)-(5) applies. Under R.C. 2506.03(A)(2), the appellant may introduce additional evidence if:

(2) The appellant was not permitted to appear and be heard in person, or by the appellant's attorney, in opposition to the final order, adjudication, or decision, and to do any of the following:

(a)  Present the appellant's position, arguments, and contentions;

(b)  Offer and examine witnesses and present evidence in support;

(c)  Cross-examine witnesses purporting to refute the appellant's position, arguments, and contentions;

(d)  Offer evidence to refute evidence and testimony offered in opposition to the appellant's position, arguments, and contentions;

(e)  Proffer any such evidence into the record, if the admission of it is denied by the officer or body appealed from.

R.C. 2506.03(A)(2)(a)-(e). Thus, under R.C. 2506.03(A)(2), where an appellant was deprived of many, if not all, of his due-process rights at the administrative level, the court may receive new evidence and proceed to determine the validity of the administrative agency's action in light thereof. *See* R.C. 2506.03(B). We can see no reason why R.C. 3319.16 should be more restrictive than R.C. 2506.03 with respect to the introduction of new evidence. Where, as here, a teacher is

significantly denied their rights to due process, it would certainly be "advisable" for the court of common pleas to hold hearings and consider new evidence.

{¶37} To review, we have thus far concluded that, although the Board utterly failed to comply with R.C. 3319.16 prior to terminating Unterbrink's teaching contract, the Board nonetheless entered an order of termination that could be appealed by Unterbrink under R.C. 3319.16. Furthermore, we have concluded that in an R.C. 3319.16 appeal, a court of common pleas is able to remand the matter of a teacher's termination to a board of education so that the board can conduct further proceedings consistent with the requirements of R.C. 3319.16. Therefore, to the extent that Unterbrink's petition for a writ of mandamus requested that the Board be compelled to provide him with all of the rights to which he is entitled under R.C. 3319.16, Unterbrink could have obtained this relief via an R.C. 3319.16 appeal. Thus, in this respect, R.C. 3319.16 supplied an adequate remedy in the ordinary course of law. Moreover, we have observed that a board's failure to adhere strictly to R.C. 3319.16's notice and hearing provisions does not necessarily render an R.C. 3319.16 appeal inadequate because the court of common pleas has broad authority under R.C. 3319.16 to conduct hearings and accept new evidence.

{¶38} Still, we have not yet determined whether Unterbrink could have obtained all the relief he sought in his petition for a writ of mandamus via an R.C. 3319.16 appeal. As noted above, in his petition for a writ of mandamus, Unterbrink

requested that the trial court order the Board to provide him with the "statutory termination process pursuant to R.C. 3319.16." (Doc. No. 1). In his petition, Unterbrink also asked for alternative relief, namely, that the Board be compelled to issue him a limited contract for the 2017-2018 school year. (*Id.*). This demand was apparently based, at least in part, on Unterbrink's assertion that "[t]he Board's failure to afford [him] statutory process under R.C. 3319.16 voids the Board's June 7, 2017 termination action." (*Id.*). Thus, Unterbrink essentially claimed that because the Board failed to comply with R.C. 3319.16's notice and hearing provisions, the Board did not have jurisdiction to terminate his contract. Accordingly, in order to fully resolve Unterbrink's claim that an R.C. 3319.16 appeal was not an adequate remedy in the ordinary course of law, we must determine whether, in an R.C. 3319.16 appeal, a court of common pleas can consider whether a board has the power to terminate a teacher's contract notwithstanding the board's noncompliance with R.C. 3319.16.

{¶39} We find our answer in *State ex rel. Webb v. Board of Education of the Bryan City School District*. In *State ex rel. Webb*, a teacher was notified by his employing board that it was considering terminating his teaching contract pursuant to R.C. 3319.16. 10 Ohio St.3d 27, at syllabus. On February 1, 1983, the teacher made a written demand under R.C. 3319.16 for a hearing before a referee, which was subsequently scheduled for March 2, 1983. *Id.* However, the hearing was not

held on March 2, 1983. *Id.* On March 11, 1983, the teacher filed a petition for a writ of mandamus in the court of appeals requesting that the termination proceedings be dismissed on the basis that the hearing before the referee "was not commenced or conducted within thirty days of his written demand." *Id.* After a hearing, the court of appeals granted the writ, concluding that "'where the Board fails to conduct a hearing * * * within 30 days from the date of receipt of the * * * teacher's written demand for such a hearing, the Board is without authority to suspend or terminate * * * [the] teacher's employment.'" *Id.*

{¶40} In its decision reversing the court of appeals's decision granting the writ, the Supreme Court of Ohio noted that "R.C. 3319.16 unequivocally provides for both administrative and judicial remedies and review of claims, which [the teacher] could have exercised to advance his argument that [R.C. 3319.16] imposes a jurisdictional requirement on a public school board to conduct a hearing within the thirty days of the teacher's written request * * *." *Id.* at 32. It further observed that "[t]he issue of whether the hearing * * * was timely afforded could have been raised on appeal from an adverse order of the school board" and that "[m]andamus cannot be used as a substitute for available administrative or legal remedies, absent special circumstances." *Id.* The court thus concluded that "an aggrieved teacher * * * has an adequate remedy at law under R.C. 3319.16 to seek redress for hearing

rights that have been violated by a school board, and mandamus will not be a substitute for the foregoing legal remedy." *Id.* at 33.

**{¶41}** Despite the apparently plain applicability of *State ex rel. Webb* to the facts of this case, Unterbrink argues that it is "distinguishable * * * and is not controlling." (Appellant's Brief at 13). He first argues that *State ex rel. Webb* is distinguishable because, unlike when he was terminated, there was no question that the termination in *State ex rel. Webb* arose under R.C. 3319.16. (*Id.*). He insists that, in his case, the Board "has been unequivocal that [his] termination was not pursuant to or governed by R.C. 3319.16 and that [he] was never entitled to R.C. 3319.16's protections." (*Id.*). However, unless superseded by the terms of a collective bargaining agreement, R.C. 3319.16 "provides the exclusive rights and remedies for a teacher facing termination of his employment contract." *Elsass v. St. Marys City School Dist. Bd. of Edn.*, 3d Dist. Auglaize No. 2-10-30, 2011-Ohio-1870, ¶ 66; *see Flower v. Brunswick City School Dist. Bd. of Edn.*, 9th Dist. Medina No. 14CA0021-M, 2015-Ohio-2620, ¶ 23-31 (concluding that "under R.C. 4117.10(A), the [teacher termination provisions contained in the collective bargaining agreement] supersede the statutory procedures for teacher termination set forth in R.C. 3319.16"). In this case, at the trial court level, Unterbrink successfully argued that the CBA did not abrogate his rights under R.C. 3319.16 and that his termination should have proceeded in the manner specified by R.C.

3319.16. (*See* Doc. No. 33). Consequently, the fact that the Board did not believe that it had to follow R.C. 3319.16 when it terminated Unterbrink's contract did not mean that the termination did not occur under R.C. 3319.16 or that the Board was relieved of its obligation to follow the statute. Furthermore, that Unterbrink was terminated without the protections afforded by R.C. 3319.16 does not mean that he was not in fact terminated under R.C. 3319.16; it means only that in being terminated under R.C. 3319.16, he was denied the rights afforded him thereunder.

{¶42} Unterbrink also tries to distinguish *State ex rel. Webb* on the basis that the court in *State ex rel. Webb* stated that there are "special circumstances" in which mandamus would be appropriate. (Appellant's Brief at 14). He claims that such "special circumstances" are present in this case because, unlike in *State ex rel. Webb*, the Board "did not terminate [him] pursuant to R.C. 3319.16." (*Id.*). Again, however, the fact that the Board did not comply with R.C. 3319.16 when it terminated Unterbrink's contract does not mean that Unterbrink was not terminated under R.C. 3319.16. Thus, we cannot conclude that the Board's failure to follow R.C. 3319.16 when it terminated Unterbrink's contract, though absolute, presents a "special circumstance" justifying relief in mandamus.

{¶43} Finally, Unterbrink argues that *State ex rel. Webb* is distinguishable because "the specific holding of *Webb* is limited to 'seeking redress for *hearing rights* that have been violated.'" (Emphasis sic.) (*Id.*). Unterbrink suggests that the

"hearing rights" referred to in *State ex rel. Webb* are those that arise after a teacher has received notice and requested a hearing, e.g., the right to a timely hearing, the right to be represented by counsel at the hearing, or the right to present evidence. (*See id.*). He argues that *State ex rel. Webb* "should not be read so broadly to equate the procedural hearing issues that are remedial on a direct appeal with the complete evisceration of the R.C. 3319.16 termination process that occurred in this case." (*Id.*). However, we cannot find anything in *State ex rel. Webb* that supports limiting its holding in this way. Furthermore, we see no reason why an R.C. 3319.16 appeal would be adequate to redress relatively less-serious violations of R.C. 3319.16 procedural rights but inadequate to remedy an outright denial of the same rights. Arguably, the job of the court of common pleas would be easier, and the outcome clearer, in instances where a teacher was not afforded any of R.C. 3319.16's protections prior to termination. If a court of common pleas is able to determine whether a board is divested of its authority to terminate by reason of its failure to provide a teacher with *one* of their rights under R.C. 3319.16, it should certainly be able to determine whether a board loses its power when a teacher is denied *all* of their R.C. 3319.16 pre-termination rights.

{¶44} Therefore, applying *State ex rel. Webb*, we conclude that, in an R.C. 3319.16 appeal, a court of common pleas can consider whether a board's total failure to comply with R.C. 3319.16 prior to terminating a teacher's contract

stripped the board of its authority to terminate. Moreover, we conclude that, if the court finds that the board was without the power to terminate under such circumstances, the court is empowered to reverse the teacher's termination under R.C. 3319.16. Accordingly, to the extent that Unterbrink's petition for a writ of mandamus requested that the Board be compelled to rescind its allegedly void termination action and restore his contract for the 2017-2018 school year, Unterbrink could have obtained this relief via an R.C. 3319.16 appeal.

{¶45} Thus far, we have concluded that while there was absolutely no compliance with the requirements of R.C. 3319.16 preceding the termination of Unterbrink's teaching contract, there was still an order of termination that could have been appealed under R.C. 3319.16. In addition, we have concluded that the Board's failure to follow R.C. 3319.16 before terminating Unterbrink's contract would not have itself precluded Unterbrink from using an R.C. 3319.16 appeal to obtain the relief he sought in his mandamus action. Consequently, an R.C. 3319.16 appeal would not have been an inadequate remedy, at least for this reason. However, our work is not at its end. We must now consider Unterbrink's argument that he did not have an adequate remedy in the ordinary course of law by way of an R.C. 3319.16 appeal because he never received notice of the Board's order of termination sufficient to trigger the time for appeal. Unterbrink argues that "only actual notice will satisfy R.C. 3319.16's notice requirement." (Appellant's Brief at

17). He further suggests that R.C. 3319.16's supposed actual-notice requirement is satisfied only when a terminated teacher receives written notice setting forth the fact of and specific grounds for termination. (*See id.* at 15, 17-18).

{¶46} Initially, we agree with Unterbrink that, as used in R.C. 3319.16, the phrase "receipt of notice of the entry of such order" should be interpreted as requiring that a teacher have actual notice of the entry of an order of termination before the 30-day appeal period can commence. "'[W]here a statute requires notice of a proceeding, but is silent concerning its form or manner of service, actual notice will alone satisfy such requirement.'" *State ex rel. Peake v. Bd. of Edn. of South Point Local School Dist.*, 44 Ohio St.2d 119, 122 (1975), quoting *Moore v. Given*, 39 Ohio St. 661 (1884), paragraph two of the syllabus. Hence, because R.C. 3319.16 does not specify the form of notice required to trigger the 30-day appeal period, we hold that actual notice is required.

{¶47} Nevertheless, although we conclude that R.C. 3319.16 requires actual notice, we do not agree with Unterbrink that actual notice can be accomplished only through service of a written notice stating the specific grounds for termination. We arrive at this conclusion by reference to civil service laws, specifically R.C. 124.34 and its accompanying administrative regulations. In past cases, "[t]eacher tenure and dismissal laws have been likened to civil service laws," and R.C. 124.34 in particular has been analogized with R.C. 3319.16. *State ex rel. Webb*, 10 Ohio St.3d

at 31, citing *State ex rel. Bishop v. Bd. of Edn. of Mt. Orab Village School Dist., Brown Cty.*, 139 Ohio St. 427, 438 (1942).

{¶48} Under R.C. 124.34, "[i]n case of * * * removal [of an officer or employee in the classified service], * * * the appointing authority shall serve the employee with a copy of the order of * * * removal, which order shall state the reasons for the action." R.C. 124.34(B). Then, "[w]ithin ten days following the date on which the order is served * * *, the employee * * * may file an appeal of the order in writing with the state personnel board of review or the commission." *Id.* Ohio Adm.Code 124-1-03 affirms this ten-day period, requiring that appeals from "section 124.34 orders" "shall be filed within ten calendar days following the date the order is served on the employee." Ohio Adm.Code 124-1-03(A). After setting forth a list of filing deadlines for various administrative actions, the regulation then provides that "[a]ppeals from all other actions * * * shall be filed not more than thirty calendar days after the time the appellant receives actual notice of the action." Ohio Adm.Code 124-1-03(I). Ohio Adm.Code 124-1-03(I) has been interpreted as requiring an appellant to file an administrative appeal within 30 days of receiving actual notice of their removal even if their employer failed to provide them with a written order of removal as required by R.C. 124.34. *Shelton v. Gallia Cty. Veterans Serv. Comm.*, 194 Ohio App.3d 80, 2011-Ohio-1906, ¶ 20-22 (4th Dist.); *Malagisi v. Mahoning Cty. Commrs.*, 7th Dist. Mahoning No. 09 MA 150,

2011-Ohio-1464, ¶ 31-57. Moreover, applying earlier versions of R.C. 124.34 and Ohio Adm.Code 124-1-03, the Supreme Court of Ohio determined that where an employer did not serve an employee with a written order of removal or file an order of removal with the state personnel board of review, the employee could still appeal their removal within 30 days of the time they had actual notice of their removal. *State ex rel. Shine v. Garofalo*, 69 Ohio St.2d 253, 253-256 (1982); *State ex rel. Cartmell v. Dorrian*, 70 Ohio St.2d 128, 128-130 (1982).

{¶49} Thus, in the context of the classified civil service, as long as an employee has actual notice, the employee is able to appeal from an order of removal notwithstanding the fact that they were never served with a written order stating the specific reasons for their removal. Turning to R.C. 3319.16, with an actual notice requirement read into its text, the language of R.C. 3319.16 is quite similar to Ohio Adm.Code 124-1-03(I). As a result, we conclude that a teacher who has not been served with a written order of termination setting out the particular grounds for their termination can still appeal from the order of termination under R.C. 3319.16 within 30 days after they receive actual notice of the entry of the order.

{¶50} Having concluded that R.C. 3319.16 requires that a teacher have actual notice of the entry of an order of termination, we must finally determine whether Unterbrink had such notice in this case. It is undisputed that Unterbrink knew that the Board had voted to terminate his teaching contract not long after the Board's

vote. According to Unterbrink, he "first learned that the Board took a vote to terminate [his] employment contract when [he] received a call from [EEA's] President notifying [him] of the vote." (Doc. No. 30, Appx. 1). Although Unterbrink could not recall exactly when he received this phone call, he believed that it occurred on June 8, 2017, the day after the Board voted to terminate his contract. (*Id.*). However, Unterbrink argues that this phone call was not sufficient notice under R.C. 3319.16 because the phone call was simply "verbal notice from a third party that a vote [had] occurred" rather than notice from the Board itself that an order of termination had been entered. (Appellant's Brief at 17-18). For purposes of this case, we assume without deciding that Unterbrink is correct and that verbal notice of the kind received by Unterbrink does not satisfy R.C. 3319.16's actual-notice requirement.

{¶51} Yet, though we assume that the verbal notice in this case was not sufficient to give Unterbrink actual notice, and while the Board never served Unterbrink with a written order of termination stating the specific grounds for his termination, we conclude that the Board did provide some notification of termination sufficient to satisfy R.C. 3319.16's actual-notice requirement. In August 2017, after ODE purported to grant Unterbrink an extension of his Resident Educator license retroactive to July 1, 2017, Unterbrink sought reinstatement to his teaching position. Specifically, "[o]n or about August 10, 2017, * * * Unterbrink,

by and through his representative, requested in writing that the Board reinstate him under his newly issued license." (Doc. No. 1). On August 18, 2017, "[t]he Board, by and through its superintendent, responded * * * that it did not intend to reinstate * * * Unterbrink." (*Id.*). This communication, which was addressed to Unterbrink's representative, provided, in relevant part:

> [T]he District does not intend to reinstate Mr. Unterbrink to a full-time teaching position * * *. Mr. Unterbrink's third failure of [the RESA] rendered him ineligible for a renewal of a resident educator license or a one-year interim license * * *. [ODE] actually declined Mr. Unterbrink's June 1, 2017 application for a one-year license and his June 2, 2017 application for a long-term substitute license. Of course, a teacher who is not able to obtain any sort of license to teach is not useful to a school district so the Board filled his former position * * *.

(Doc. No. 1, Ex. 9).

{¶52} Thus, in his August 18, 2017 letter, the superintendent expressed that the Board had terminated Unterbrink's teaching contract and summarized the reasons for the Board's decision. Moreover, this letter advised that the Board's termination decision was final. This letter is sufficient to give actual notice of the fact that the Board had entered an order terminating Unterbrink's teaching contract.

-39-

*See Shelton*, 194 Ohio App.3d 80, 2011-Ohio-1906, at ¶ 2, 21-22 (where employee was not served with a written order of removal and wrote to commission-employer asserting that he had been "wrongfully terminated," employee had actual notice of removal sufficient to trigger 30-day appeal period no later than date of receipt of response letter ratifying the removal decision). The record does not reflect when exactly Unterbrink's representative first informed him of this letter or put Unterbrink into possession of it. However, the fact that he grieved his termination under the CBA in September 2017 suggests that Unterbrink was aware of the letter's existence and its contents around that time. Furthermore, as the letter was attached to his petition for a writ of mandamus, Unterbrink was obviously in possession of the letter in advance of the filing of his petition.

{¶53} In addition, we note that, the superintendent's August 18, 2017 letter aside, other items in the record indicate that, long before he filed his petition for a writ of mandamus, Unterbrink knew that the Board had formally terminated his teaching contract and that the Board did so because he failed to pass the RESA as it existed before it was restructured. While Unterbrink's affidavit states that "[t]he Board never provided [him] with a copy of the June 7, 2017 Board meeting minutes," Unterbrink cannot plausibly claim that he never possessed a copy of the minutes or had knowledge of their contents. (Doc. No. 30, Appx. 1). After all, like the superintendent's August 18, 2017 letter, a copy of the Board's June 7, 2017

minutes was attached to Unterbrink's petition for a writ of mandamus, and the Board's minutes were also submitted as a joint exhibit in the arbitration proceedings to which Unterbrink was a party. Finally, as noted by the trial court, Unterbrink's termination and the reasons for it were discussed at length in the arbitrator's decision denying Unterbrink's grievance.

{¶54} Ultimately, we need not determine when precisely the 30-day appeal period began to run for Unterbrink. Regardless of the soundness of the trial court's conclusions about when the period commenced, the record is clear that, well before he filed his petition for a writ of mandamus, Unterbrink had sufficient notice of the Board's entry of the order terminating his contract. Accordingly, Unterbrink could have and should have filed an R.C. 3319.16 appeal challenging the Board's order terminating his teaching contract. That Unterbrink did not file an R.C. 3319.16 appeal does not now make relief in mandamus appropriate. *State ex rel. Jefferson v. Russo*, 159 Ohio St.3d 280, 2020-Ohio-338, ¶ 11 ("The availability of an appeal is an adequate remedy even if the relator * * * fails to pursue it or is unsuccessful."), citing *Jackson v. Johnson*, 135 Ohio St.3d 364, 2013-Ohio-999, ¶ 5. Therefore, because we conclude that Unterbrink had notice sufficient to trigger his right to an appeal under R.C. 3319.16, and given our previous determination that an R.C. 3319.16 appeal would otherwise have been an adequate remedy in the ordinary course of law, we conclude that the trial court did not err by granting the Board's

motion for summary judgment and denying Unterbrink's request for a writ of mandamus.

{¶55} Unterbrink's assignments of error are overruled.

{¶56} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**